**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **VIDIEL ANGEL BELLO RODRIGUEZ,** | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **Case No. CIV-26-1188-D** |
| **DIAMONDBACK INSTALLATION DIRECTOR et al.,** | ) | |
| **Respondents.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Vidiel Angel-Bello Rodriguez, a noncitizen[1] and citizen of Cuba, proceeding *pro se*, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his detention by U.S. Immigration and Customs Enforcement (ICE). (ECF No. 1). Respondents field a response to the Petition. (ECF No. 7).[2] United States District Judge Timothy D. DeGiusti referred this matter to the undersigned magistrate judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). For the reasons set forth below, the undersigned recommends that the Petition be **GRANTED** in part, and order Respondents

[1] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

[2] On May 6, 2026, Respondent also filed a "Motion for Relief From Transfer Notification Period Due to Exigent Circumstances." (ECF No. 10). In the Motion, Respondents stated that Petitioner developed a medical condition which required him to be transferred to a different detention center, seeking leave of court excusing them from failing to provide 72 hours notice of a transfer as required by the Order for Response. (ECF No. 10). But to date, Petitioner is still detained at Diamondback Correctional Facility. To the extent Petitioner needs to be moved due to said medical condition, the Court should grant the request and no further notice is required.

to provide Petitioner a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven business days or otherwise to release him if there is no hearing within that time.

## I. BACKGROUND AND PETIITONER'S CLAIM FOR RELIEF

Petitioner, a citizen of Cuba, entered the United States at a port-of-entry near Brownsville, Texas on April 16, 2024. (ECF Nos. 1-1 & 7-2:1). On that date, DHS officials paroled Petitioner into the United States through Customs and Border Patrol and issued him a Notice to Appear, classifying him as an "arriving alien" and charging him with being inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i) as someone who entered the United States without proper entry documentation. (ECF No. 1-1). Neither party provided any information regarding how Petitioner came back into ICE custody, but both parties agree that occurred on July 3, 2025. On October 6, 2026, Petitioner requested a bond hearing, but the request was denied for lack of jurisdiction because Petitioner was classified as an "arriving alien" subject to mandatory detention under 8 U.S.C. § 1225(b)(1). *See* ECF No. 7-1; 8 U.S.C. § 1225(b)(1). On May 20, 2026, an Immigration Judge ordered Petitioner removed, and an appeal of the removal order is pending.[3] On May 22, 2026, Mr. Rodriguez filed a Petition seeking a Writ of Habeas Corpus. *See* ECF No. 1. Petitioner is currently detained in the Diamondback Correctional Facility in Watonga, Oklahoma.[4]

Petitioner alleges that he is being improperly detained under Section 1225(b) and should, instead, be detained under Section 1226(a). (ECF No. 1:6). According to Petitioner, he was not "arriving" or "applying for admission" when he was arrested in July

---

[3] *See* https:acis.eoir.justice.gov/en/caseInformation (last visited July 23, 2026).

[4] *See* https:locator.ice/gov/odls/#/results (last visited July 23, 2026).

2025 and is not a "recent entrant" into the United States. (ECF No. 1:6). Petitioner claims his current detention violates the Immigration and Nationality Act (INA) and the Fifth Amendment, and he seeks release. (ECF No. 1:6-7).

## II. STANDARD OF REVIEW

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## III. JUDICIAL ESTOPPEL

Respondent argues: "Petitioner's claim that his detention is governed by § 1226 is [ ] foreclosed by the doctrine of judicial estoppel. He has already relied on his status as an "arriving alien" in his efforts to obtain lawful status [in his underlying immigration proceedings]." (ECF No. 7:6). According to Respondent:

> Petitioner's new argument that he is not an arriving alien is the exact opposite of his earlier position. This deliberate change is an exercise in trying to game the system and gain a benefit that he is not entitled to. If he is an arriving alien for the purposes of his immigration proceedings, he must remain an arriving alien in his habeas proceeding. Accordingly, his argument that he is not an arriving alien is foreclosed by judicial estoppel.

(ECF No. 7:7). The Court should reject Respondent's argument.

Judicial estoppel is an equitable doctrine "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 743 (2001). The Supreme Court has cautioned judges considering whether to apply judicial estoppel that

the "equitable inquiry" must be made "'on a case-by-case basis,' considering all relevant facts and circumstances." *Keathley v. Buddy Ayers Constr., Inc.*, 146 S. Ct. 1532, 1539 (2026) (quoting *Holland v. Florida*, 560 U.S. 631, 649–50 (2010)).

While there is no mechanical test for whether judicial estoppel should apply, courts generally consider three factors: (1) whether a party's position is "clearly inconsistent" with the position it took in prior litigation; (2) whether the party prevailed in its argument to the prior tribunal, such that accepting its new position "would create the perception that either the first or second court was misled"; and (3) whether allowing the party to change its position would give it an unfair advantage in the litigation. *Eastman v. Union Pac. R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007), *abrogated on other grounds*, *Keathley*, 146 S. Ct. at 1538-40.

The undersigned finds that Petitioner should not be estopped from making legal arguments inconsistent with those it advanced before the IJ.[5] The Tenth Circuit has repeatedly "held that judicial estoppel only applies when the position to be estopped is

[5] There is some question as to whether judicial estoppel can apply at all to arguments made before an IJ. In *Webb v. ABF Freight System, Inc.*, 155 F.3d 1230, 1242 (10th Cir. 1998), the Tenth Circuit described one of its previous cases as standing for the proposition "that claims inconsistent with others raised in administrative context[s] are not barred by judicial estoppel." However, *Webb* was decided at a time when the Tenth Circuit did not recognize the doctrine of judicial estoppel. *Id.* Later, the Tenth Circuit ruled that the Supreme Court's "binding precedent" requires it to apply judicial estoppel in certain circumstances. *Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1068-69 (10th Cir. 2005). While the Tenth Circuit has subsequently applied judicial estoppel to arguments made in some administrative contexts, *e.g.*, *Mathews v. Denv. Newspaper Agency LLP*, 649 F.3d 1199, 1209-10 (10th Cir. 2011) (asserting that a plaintiff who had made successful arguments before a Social Security Administration administrative law judge and then attempted to make contrary arguments in federal court represented "a paradigmatic case for judicial estoppel"), the undersigned has been unable to identify any Tenth Circuit case applying the doctrine to arguments made in Immigration Court. For this case, the undersigned assumes without deciding that the doctrine can be applied to arguments made before an IJ.

one of fact, not one of law." *BancInsure, Inc. v. FDIC*, 796 F.3d 1226, 1240 (10th Cir. 2015) (collecting cases); *see also Powell v. Crescent Servs., LLC*, No. CIV-19-1037-G, 2020 WL 5015148, at *3–*4 (W.D. Okla. June 12, 2020) (finding judicial estoppel does not apply where a party changes her legal position but not her factual position); *Torres v. Bacon*, No. MJM-25-3961, 2026 WL 979569, at *5 (D. Md. Apr. 1, 2026) (finding judicial estoppel did not bar the government from taking inconsistent positions regarding the legal basis for a noncitizen's detention before the immigration and district courts).

## IV. SECTION 1226(a) APPLIES TO PETITIONER'S DETENTION

Respondents allege Petitioner is properly detained under 8 U.S.C. § 1225(b)(1). *See* ECF No. 7:5. The Court must first determine what statutory provision governs Petitioner's detention before it can determine whether the INA has been violated. For the reasons explained below, the Court should find § 1226(a)—rather than § 1225(b)(1)—governs Petitioner's re-detention.

The two sections of the INA at issue that govern detention of noncitizens pending removal proceedings are 8 U.S.C. §§ 1225 and 1226. Section 1225(a)(1) describes an "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States." *Id.* § 1225(a)(1) (citation modified). Section 1225(b)(1) "governs procedures for the inspection of aliens arriving in the United States who have not been admitted or paroled." *M.S.P.C. v. U.S. Customs & Border Prot.*, 60 F. Supp. 3d 1156, 1161 (D.N.M. 2014) (citing § 1225(b)(1)).

> Aliens who have not been admitted or paroled into the United States and who have not satisfactorily demonstrated to an immigration officer that the alien has been physically present in the United States continuously for the prior two years are subject to expedited removal without further hearing or

> review, unless the alien indicates an intention to apply for asylum or a fear of persecution, at which point the immigration officer shall refer the alien for an interview by an asylum officer.

*Id.* (citing § 1225(b)(1)(A)(i)-(iii)). Section 1225(b)(1)(B)(ii) further requires that, if an asylum officer determines that a noncitizen has a credible fear of persecution, the noncitizen shall be detained for further consideration of the application for asylum.

Fundamentally, under § 1225(b)(1), a noncitizen who arrives at a port of entry and applies for admission is ordered removed "without further hearing or review" unless the noncitizen "indicates either an intention to apply for asylum" or expresses a fear of persecution. If Petitioner is subject to this "expedited removal" under § 1225(b)(1), he is not entitled to a bond hearing. But noncitizens detained under § 1225(b)(1)(B)(ii) can be paroled under 8 U.S.C. § 1182(d)(5)(A). On the other hand, § 1226(a) more generally authorizes detention of a noncitizen pending removal proceedings and entitles the noncitizen to a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1))). The issue boils down to whether Petitioner is classified as an "arriving alien" subject to mandatory detention under Section 1225(b) or under Section 1226(a) which would allow Petitioner to appear before an IJ for a bond hearing. *See* 8 U.S.C. §§ 1225 & 1226.

The Tenth Circuit recently rejected the statutory interpretation of § 1225 as urged by Respondents. *Santillan Quiroz v. Mullin*, --- F.4th ---, No. 26-6019, 2026 WL 1876709, at *4-17 (10th Cir. June 30, 2026). In *Santillan Quiroz*, the Tenth Circuit concluded "those who entered the United States without admission and who have lived here since are

categorically unable to seek admission while they remain in the country." Id. at *7 (citation modified). Accordingly, "noncitizens who entered the United States and were thereafter detained in the interior of the country are usually subject to § 1226(a) (and thus eligible for bond), not § 1225(b)(2)(A)." *Id.* at *5. While *Santillan Quiroz* concerned a dispute over the proper interpretation of § 1225(b)(2)(A), not § 1225(b)(1), the Tenth Circuit observed that "§ 1225(b)(1) . . . is also limited to the border." *Id.* at *13.

It is undisputed that when Petitioner was re-detained on July 3, 2025, he was in the interior of the country, over a year after when he initially entered the country. *See supra.* Judges in this District have routinely found that where a "Petitioner was paroled into the United States, permitted to reside in the interior of the country for several years, pursued his asylum application, and complied with the conditions of his release before being re-detained during a routine check-in with immigration authorities," his "detention is mo[st] naturally characterized as detention 'pending a decision on whether the alien is to be removed from the United States' within the meaning of § 1226(a)." *Zhakhonov v. Grant*, No. CIV-26-350-J, 2026 WL 1865418, at *3 (W.D. Okla. June 29, 2026); *see also Drozdov v. Lyons*, No. CIV-26-365- SLP, 2026 WL 1470929, at *2 (W.D. Okla. May 26, 2026) (finding a noncitizen detained after revocation of § 1182(d)(5) humanitarian parole is held pursuant to § 1226(a)); *Ferrer Canquiz v. Johnson*, No. CIV-26-461-HE, Doc. 11 at 4-6 (W.D. Okla. July 8, 2026) (R&R) (same) (collecting cases). Therefore, based on Tenth Circuit precedent and consistent with the approach of the majority of Judges in this District, the undersigned recommends the Court apply § 1226(a) to govern

Petitioner's current detention.[6] *See Bohorquez Bravo v. Lyons*, No. CIV-26-912-R, 2026 WL 1896141, at *1 (W.D. Okla. July 1, 2026) (holding in accordance with *Santillan Quiroz* that a similarly situated petitioner is entitled to a bond hearing under § 1226(a)).

## V. THE PROPER REMEDY IS A BOND HEARING

Petitioner requests the Court order his immediate release or alternatively that the government "prove by clear and convincing evidence that [his] detention is absolutly [sic] necessary." (ECF No. 1:7). Consistent with a common approach in this District, the undersigned recommends Petitioner be afforded a constitutionally sufficient bond hearing as a lesser remedy than release. A bond hearing is the proper remedy for a noncitizen detained under § 1226(a). *See Santillan Quiroz*, 2026 WL 1876709 at *17 n.13; *see also Karimov v. Cerna*, No. CIV-26-304-R, 2026 WL 950130, at *1 (W.D. Okla. Apr. 8, 2026) ("As a remedy, Petitioner requests his immediate release, but the Court concludes that a bond or custody redetermination hearing is the appropriate remedy." (citing *Boumediene v. Bush*, 553 U.S. 723, 779 (2008))). As Judge Russell acknowledged, "Petitioner is entitled to the custody procedures provided by [§ 1226(a)]," and "the statute provides the Department of Homeland Security the discretion to either detain a noncitizen or release the noncitizen on bond." *Id.* (citation modified). As such, "an individualized

---

[6] This conclusion is also in accord with persuasive authority in the Second, Sixth, and Eleventh Circuits, which rejected Respondents' statutory interpretation of § 1225(b)(2). *See Lopez-Campos v. Raycraft*, 175 F.4th 713, 722 (6th Cir. 2026); *Hernandez Alvarez v. Warden*, Fed. Det. Ctr. Miami, 175 F.4th 1258, 1285 (11th Cir. 2026); *Cunha v. Freden*, 175 F.4th 61, 69 (2d Cir. 2026). In contrast, the Fifth and Eighth Circuits recently applied § 1225 to similar habeas challenges, agreeing with Respondents' position. *Avila v. Bondi*, 170 F.4th 1128, 1134-38 (8th Cir. 2026); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498, 502-08 (5th Cir. 2026). Respondents have filed a cert petition to the Supreme Court. *See* Cert. Pet., *Raycraft v. Lopez-Campos*, No. 25-1415 (filed June 22, 2026)

custody redetermination hearing would provide Petitioner with the process he is due under the statute." *Id.* (citation modified). Further, Petitioner has not alleged or provided evidence that he was previously detained and released under an IJ's bond or any other provision now warranting immediate release.[7]

Petitioner asks the Court to order the government to bear the burden of proof at a bond hearing, but Judges in this District, including this Court, have declined to order burden shifting. *See Singh v. Figueroa*, No. CIV-26-600-R, 2026 WL 1181699, at *1 n.2 (W.D. Okla. Apr. 30, 2026) (denying petitioner's request for burden shifting, and holding "although petitioner is entitled to a bond hearing under § 1226(a), the Court declines to specify or alter the burden of proof at this stage") (citation modified); *see also*, *e.g.*, *Singh v. Mullin*, No. CIV-26-712-HE, ECF No. 13, at 2-7 (W.D. Okla. June 18, 2026) (same); *Rangel v. Mullin*, No. CIV-26-568-D, 2026 WL 1625653, at *2 n.2 (W.D. Okla.

---

[7] In some cases, Judges in this District have ordered release for noncitizens whose earlier release was improperly revoked in the absence of changed circumstances or proper procedures. *See*, *e.g.*, *Singh v. Grant*, No. CIV-26-289-R, 2026 WL 1483557, at *1-2 (W.D. Okla. May 27, 2026) (ordering release where ICE improperly revoked petitioner's prior bond ordered by an immigration judge); *Ewere v. Cerna*, No. CIV-26-320-SLP, 2026 WL 1207088, at *2 (W.D. Okla. May 4, 2026) (ordering release where ICE improperly revoked petitioner's prior humanitarian parole); *Skutar v. Mullin*, CIV-26-0036-HE, Doc. 15, at 2-3 (W.D. Okla. Apr. 24, 2026) (ordering petitioner's immediate release and stating "while the Attorney General has authority to revoke bond at any time under 8 U.S.C. § 1226(b), if an immigration judge has determined the noncitizen should be released, the DHS may not re-arrest that noncitizen absent a change of circumstance") (citation modified). However, here Petitioner fails to allege or prove he was previously ordered released pursuant to § 1226(a) by an immigration judge rather than at the discretion of an ICE or customs agent. Accordingly, Petitioner has not alleged or provided evidence that the circumstances of his re-detention entitle him to release rather than a bond hearing. *See Singh v. Mullin*, No. CIV-26-471-SLP, 2026 WL 1255801, at *2 (W.D. Okla. May 7, 2026) (finding petitioner is entitled to a bond hearing but not release because he "has not provided the Court with evidence of his prior Order of Release or its terms, nor has Petitioner supported his requested form of relief with legal authority"). Therefore, the undersigned concludes Petitioner is entitled only to a bond hearing and not release.

June 5, 2026) (same); *Singh v. Grant*, No. CIV-26-279-J, 2026 WL 1035100, at *1- 2 (W.D. Okla. Apr. 16, 2026) (same). Accordingly, the undersigned does not recommend burden shifting in this case.

## VI. RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the foregoing reasons, the undersigned recommends that the Court **GRANT, IN PART,** the Petition for habeas relief by ordering Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within seven business days or otherwise release Petitioner if he has not received a lawful bond hearing within that period. The Court should order Respondents to certify compliance by filing a status report within seven business days of the Court's order.

The parties may object to this Report and Recommendation under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Any objection must be filed not later than **July 30, 2026**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## VII. STATUS OF REFERRAL

This Report and Recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in the captioned matter.

ENTERED on July 23, 2026.

Shon T. Erwin

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE